T.C. Summary Opinion 2001-164

UNITED STATES TAX COURT

VANCE ORPHEUS BRIGHT, JR. AND MARY FRANCES BRIGHT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14106-99S.                    Filed October 16, 2001.

Vance Orpheus Bright, Jr. and Mary Frances Bright, pro se.

<u>Veena Luthra</u>, for respondent.

POWELL, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463[1] of the Internal Revenue Code
in effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.

---

[1]  Unless otherwise indicated, subsequent section references are
to the Internal Revenue Code in effect for the years in issue,
and Rule references are to the Tax Court Rules of Practice and
Procedure.

Respondent determined deficiencies of $1,905 and $2,791 in petitioners' 1996 and 1997 Federal income taxes, respectively. After a concession by respondent,[2] the issue is whether petitioners are entitled to deduct certain business expenses on their 1996 Federal income tax return. Petitioners resided in Palmyra, Virginia, when the petition was filed.

## Background

The facts may be summarized as follows. In 1986, petitioners purchased a house in Cumberland, Virginia (the Cumberland house). They rented the property from the time of its purchase until December 1995. In January 1996, the Cumberland house was listed for sale. The Cumberland house remained on the market for sale until August 1996, at which time petitioners moved in and it then became their primary residence. Petitioners resided at the Cumberland house until April 1997.

Prior to converting the Cumberland house into their primary residence, petitioners owned and resided in a house in Falls Church, Virginia (the Falls Church house). The sale of the Falls Church house in August 1996, precipitated their move to the Cumberland house. A gain of $162,215 from the sale of the Falls Church house was rolled over into a new residence that was under construction in Fluvanna County, Virginia (the Palmyra house).

---

[2] Respondent concedes that there is no deficiency due from petitioners for the 1997 taxable year.

See sec. 1034, repealed by sec. 312(b), Taxpayer Relief Act of 1997, Pub. L. 105-34, 111 Stat 839, effective May 6, 1997. Petitioners moved to the Palmyra house once it was completed in April 1997.

The Cumberland house was put back on the market for sale in April 1997, and was sold in August 1997. Respondent concedes that the gain from the sale of the Cumberland house was properly excluded from petitioners' gross income for 1997 pursuant to section 121. See sec. 121, enacted by sec. 312(a), Taxpayer Relief Act of 1997, Pub. L. 105-34, 111 Stat. 836 (amended by sec. 6005(e), Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 805).

Additionally, petitioners purchased an unimproved lot in Cumberland County in 1980 which they sold in 1997. They reported a capital gain of $1,597 on their 1997 Federal income tax return. In 1995, petitioners purchased an unimproved lot in Fluvanna County for $30,000. They sold the property during that year for $30,000 and reported the transaction on Schedule C, Profit or Loss From Business.

On Schedule C of petitioners' 1996 Federal income tax return, petitioners deducted the following expenses relating to the Cumberland house prior to that property's becoming their primary residence:

| | |
|---|---|
| Car and truck expenses | $5,220.16 |
| Depreciation | 3,639.50 |
| Insurance | 579.10 |
| Meals and entertainment | 210.00 |
| Business use of the Falls Church house | 1,410.90 |
| Supplies | 98.14 |
| Maintenance | 675.23 |
| Loss | $11,833.03 |

Petitioners reported no income on the 1996 Schedule C. Respondent disallowed the $11,833.03 loss relating to the Cumberland house.

## Discussion

Before we explore petitioners' argument, as we understand it, it is helpful to delineate exactly what is at issue here. Petitioners do not contend that during 1996 the rental activity of the Cumberland house constituted a trade or business of rental property under section 162. This is understandable because at the end of 1995 petitioners had abandoned any rental activity and were attempting to sell the Cumberland house. There was simply no nexus between their previous rental activity and the expenses that were incurred during 1996. Rather, petitioners contend that they were engaged in a trade or business that, in their own words, consisted of the "purchase, development, physical improvement, building construction, maintenance, and sale of real properties including the necessary planning and management these activities entailed."

In pertinent part, section 162(a) provides that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". The question is whether petitioners' activities that gave rise to the disputed deductions constituted a trade or business during 1996.

In one sense petitioners' argument here is unusual. Generally, a taxpayer seeks to avoid his or her real estate activity's being classified as a trade or business in order to claim the benefit of lower capital gains rates on the sale or disposition of real property. See, e.g., Thompson v. Commissioner, 322 F.2d 122 (5th Cir. 1963). Here, petitioners claim that their real estate activities constituted a trade or business. The considerations in deciding whether a taxpayer's activities are a trade or business are well defined. In Polakis v. Commissioner, 91 T.C. 660, 669-670 (1988), we stated:

> Determining whether a taxpayer's activities rise to a level which constitutes "'carrying on a business' requires an examination of the facts in each case." * * * Among the tests that courts have come to rely on in divining the nature of the taxpayer's activities with respect to real estate are the following: the nature and purpose of the acquisition of the property and the duration of the ownership; the continuity of sales or sales-related activity over a period of time; the volume and frequency of sales; the extent to which the taxpayer or his agents have engaged in sales activities by developing or improving the property, soliciting customers, and advertising; and the substantiality of sales when compared to other sources of taxpayer's income. [Citations omitted.]

See also <u>United States v. Winthrop</u>, 417 F.2d 905, 910 (5th Cir. 1969); <u>Hoover v. Commissioner</u>, 32 T.C. 618, 625 (1959); <u>Dressen v. Commissioner</u>, 17 T.C. 1443, 1447 (1952); <u>Thrift v. Commissioner</u>, 15 T.C. 366, 369 (1950); <u>McCullen v. Commissioner</u>, T.C. Memo. 1997-280.

Petitioners argue that their purchase and sale of the Cumberland house and the unimproved lot in Cumberland County, together with the sale of the Fluvanna County unimproved lot constituted a trade or business of buying, improving, and selling property. The Cumberland County unimproved lot was held for 16 years, and as far as the record shows there were no extensive improvements made to the property. Furthermore, we note that petitioners treated that property as a capital asset on their tax return when the property was sold rather than property being held for sale in a trade or business. While petitioners appear to have bought and sold the Fluvanna County unimproved lot in 1995, and there were alleged but undefined improvements made, there was no gain or loss on the transaction. We give that transaction little weight. The only other transaction was the sale of the Cumberland house that was held for rental income for 9 years. Furthermore, except for the rental income, petitioners derived little income from the alleged business activity. These property transactions are typical of investments rather than a trade or business of developing property. In short, we do not find that

petitioners were engaged in the trade or business of buying, developing, and selling real estate during 1996, or that the Cumberland house was held in the ordinary course of such a trade or business.

Finally, the argument may be suggested that the deductions should be allowable under section 212(1). That section allows a deduction for, inter alia, ordinary and necessary expenses paid "for the production or collection of income". When one analyzes the situation here, however, it becomes apparent that these expenses were costs associated with the sale of the Cumberland house and not for the production or collection of income. We are concerned here with the origin and character of the expenses for which the deductions were claimed. See United States v. Gilmore, 372 U.S. 39 (1963). As we have already noted, any rental activity had been abandoned, and petitioners were not in a trade or business of developing the property for sale. Petitioners held the property for sale. If petitioners had not moved into the Cumberland house and it had remained on the market until sold, those expenses, if deductible at all,[3] would have been considered as expenses of the sale. See Cramer v. Commissioner, 55 T.C. 1125, 1132 (1971); see also Hadley Falls Trust Co. v.

---

[3] For example, of the depreciation claimed, $850.50 was for office equipment. The balance ($2,789) is not explained. We are unsure how the depreciation was an ordinary and necessary expense of the sale of the property.

United States, 110 F.2d 887 (1st Cir. 1940).  While their goal

was to receive income from the sale, as we held in Gunn v.

Commissioner, 49 T.C. 38, 56 (1967):

> the word "income" in section 212(1) "is not to be given a
> wholly literal reading.  If a taxpayer sells * * * capital
> assets, section 212(1) does not permit him to deduct
> expenses of sale even though the sale produces a gain which
> constitutes 'gross income'," See Spangler v. Commissioner,
> 323 F.2d 913, 921 (C.A. 9, 1963), where the court noted that
> "Costs connected with the disposition of a capital asset are
> also capital expenditures to be added to the taxpayer's
> basis, or offset against the sales price, rather than
> expenses deductible from ordinary income." * * *

Reviewed and adopted as the report of the Small Tax Case

Division.

Decision will be entered

under Rule 155.